# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **GRAHAM LYNCH,** | ) | **CASE NO. 1:10-cv-2299** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **ITT TECHNICAL INSTITUTE, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon the Motion (ECF DKT # 73) of Defendants, ITT Technical Institute and Antonio (Tony) Darosa, for Summary Judgment.  For the following reasons, Defendants' Motion for Summary Judgment is granted as to all claims.

## I. FACTUAL BACKGROUND

ITT is a private college system providing post-secondary degree programs in the United States.  (Brouwer Decl. ¶ 3).  ITT offers master, bachelor, associate and career-oriented education programs in various fields.  *Id.*

Graham Lynch (Plaintiff) was hired by ITT as an adjunct professor on June 12, 2006.  (Lynch Dep. at 137).  Plaintiff is an African American and at the time of his hiring he was approximately sixty-seven years old.  *Id.* at 15.  Although he also taught business and math courses, Plaintiff was primarily hired to teach various courses in the field of information technology (IT).  *Id.* at 141-143, 153.

Shortly before Plaintiff was hired, on June 1, 2006, ITT revised the job description that

applied to instructors.  (Lynch Dep. at 145-147).  The job description sets forth in detail the

duties and responsibilities of the position, as well as the specific qualifications and skills required

of the person filling the position.  *Id.*  The job description sets forth the minimum academic

degree requirements as follows:

1. Education

> Bachelor's degree in a related area is required.  Faculty teaching upper division or general
> education courses must have a minimum of a Master's degree or when applicable, an
> equivalent professional certification.  A Professional certification or a Masters degree
> may also be required for program/subject matter expertise.  Formal education degrees
> must be from an accredited institution recognized by the US Department of Education.

2. Qualitative and quantitative academic preparation

> Must have a minimum of 15 semester hours in the subject area.  The required level of
> academic preparation may be higher in some states.

> Plaintiff holds a Bachelor of Science in Civil Engineering from Ohio University.  (Lynch

Dep. at 13-17).  In 1976, Plaintiff obtained a Master's in Business Administration from

Pepperdine University.  *Id*. at 55.  In addition, Plaintiff  had years of experience working with

computers, including training he received while working at IBM.  *Id*. at 18.

ITT claims that it revised its job description to avoid jeopardizing its accreditation with

the Accrediting Counsel of Independent Colleges and Schools (ACICS).  The ACICS is

recognized by the U.S. Department of Education; and currently accredits approximately 880

colleges and schools across the country.  (Gurubatham Dep. at 10, 27, 39).  One of the things

ACICS looks at when determining whether to accredit a particular college or school is whether

the institution's faculty members satisfy certain minimum education requirements which are set

by the ACICS.  *Id*. at 120-121.

2

Section 3-4-302 of the ACICS Manual, which sets forth the academic qualification requirements for faculty teaching in academic associate's degree programs, states in relevant part as follows:

> Instructors teaching general education shall hold a bachelor's degree at a minimum and shall be assigned based on their major and minor academic preparation.  Instructors at a minimum shall have earned 15 semester hours or equivalent hours of course work through a combination of hours from associate's, bachelor's, and/or graduate level course work in the area of their teaching assignment.

Sections 3-3-302(a) and 3-3-302(c) of the ACICS manual also states:

> (a) Instructors teaching courses other than general education shall have a bachelor's degree at a minimum and shall be assigned based on their major and minor academic preparation and/or related experience.  However, exceptions to the bachelor's degree requirement may be justified for instructors who have demonstrable current exceptional professional level experience in the assigned field....Minors or related degrees could be considered, but will not be the sole determining factor...The institution must be able to justify the assignment of any instructor who does not hold a bachelor's degree in the assigned teaching field...
> (c) Faculty members teaching courses not referenced above must demonstrate competency in the assigned teaching field [with e.g.] related work experience...The burden is on the institution to demonstrate and justify the qualifications of the faculty to teach their assigned courses.

Because IT courses are not considered by ACICS to be general education courses, the fifteen-semester-hours requirement set forth in the paragraph above technically would not apply to Plaintiff.  (Gurubatham Dep. at 46-48).  Henry Jones, the Chair of the IT Department, participated in Plaintiff's interview and testified that Plaintiff was fully qualified under the criteria of ITT in the area of IT.  (Aff. of Henry Jones).  Dean Ronald McClendon also testified that Plaintiff had the academic credentials as well as the real world experience, qualifying him to teach IT at ITT.  (McClendon Dep. at 90).  McClendon testified further that Plaintiff's performance in the classroom was strong.  *Id*.

However, Dr. Gurubatham, a representative of ACICS, testified as a general rule, that the ACICS requires all faculty members to have at least a bachelor's degree in the field in which they are teaching.  (Gurubatham Dep. at 83-84, 134-135).  Dr. Gurubatham also testified that it is only in rare and exceptional cases that the ACICS would consider a faculty member to be qualified to teach courses in a particular field even though he or she does not have at least a bachelor's degree in that field.  *Id*.

In August 2007, Ann Contiguglia was hired as the new "School Director," which is the top position on campus.  (Contiguglia Dep. at 26).  Plaintiff presents evidence that Contiguglia undervalued black male faculty and certainly treated them differently.  (McClendon Dep. at 100-101).  Plaintiff contends that one day Contiguglia came to McClendon and told him that she had heard a student complain that Plaintiff had made "race" remarks in class.  *Id*.  McClendon testified that he also received an email from ITT's Human Resource (HR) Department about a student complaint, directed at Plaintiff, received via the complaint hotline number.  *Id*. at 23.  However, McClendon investigated and found no evidence that racial comments had been made.  *Id*. at 22-25, 103-104.  He testified further that Contiguglia was still not satisfied and said to McClendon about Plaintiff:  "He's got to go."  *Id*. at 23-24, 27, 29-30.

In October 2008, Ronald Lewellen replaced McClendon as dean under Contiguglia.  Contiguglia made it clear to Lewellen, as she had to McClendon, that she wanted Plaintiff fired.  (Lewellen Dep. at 17).  Lewellen testified that he suspected her motive was more personal than professional, and in particular was convinced that discrimination on account of Plaintiff's age lay behind Contiguglia's animosity.  *Id*. at 19, 50, 58-59.  However, Contiguglia was not the final decision maker in Plaintiff's termination.  (Contiguglia Dep. at 59).  Contiguglia reported to

District Manager, Tony Darosa, and she herself was fired on November 18, 2008, before Plaintiff's termination.  *Id*.

From September 2005 through June 2009, District Manager, Tony Darosa was responsible for evaluating whether instructors at the campuses he oversaw met the qualification requirements set by ITT and the ACICS to teach the specific courses they were scheduled to teach.  (Darosa Dep. at 31-32).   During one of Darosa's visits to the Warrensville Heights campus, Lewellen and Contiguglia brought to his attention that Plaintiff may not have met the academic qualification requirements for the IT courses he was scheduled to teach.  *Id.* at 46. Darosa testified that it is standard procedure for the School Director to be the one to bring him this information.  *Id.* at 47.  Darosa, in concert with Lewellen and Contiguglia, reviewed Plaintiff's resume and academic transcripts; and all three determined Plaintiff failed to meet the academic requirements set forth by ITT to be an IT instructor.  *Id* at 53.  Darosa then met with Plaintiff to talk to him about his academic background and to see if Plaintiff had any education or course work that was not reflected on his resume.  *Id.*. at 56, 59-63.

Following the conversation, Darosa contacted the office of Dr. Gary Carlson.  (Darosa Dep. at 58).  Dr. Carlson was the Vice President of Academic Affairs at ITT and is currently Chair of ACICS.  (Carlson Dep. at 9, 25).  Dr. Carlson's office was at ITT's national headquarters in Carmel, Indiana.  *Id*. at 16.  Dr. Carlson was in charge of reviewing transcripts if there were any questions about whether an applicant met the academic requirements in the job description.  *Id*. at 17.  Dr. Carlson testified that ITT first looks at an instructor's academic qualifications and only tries to justify a hiring based on experience if there is no one in the community with the academic credentials to teach in the field.  *Id*. at 43.  Dr. Carlson reviewed

Plaintiff's qualifications and confirmed that Plaintiff did not satisfy the requirements of the job description to teach IT courses at ITT.  (Carlson Dep. at 35, 38, 50, 52; Darosa Dep. at 74).  Darosa then contacted ITT's HR Department to advise him of the next step in the process.  (Darosa Dep. at 78-79).  HR then did the final review of Plaintiff's credentials and also found that he did not meet the requirements set forth in the job description.  *Id.* at 79.  HR advised Darosa to look for other positions, for which Plaintiff was qualified, that they could "slide" Plaintiff into.  *Id.*  Darosa conducted a search of local ITT campuses for openings, for which Plaintiff was qualified, but found none.  *Id.* at 82.

ITT terminated Plaintiff's employment effective December 2, 2008.  (Lynch Dep. at 171.)  Plaintiff filed a Complaint against Defendant on October 8, 2010,  alleging race discrimination under Title VII of the Ohio Civil Rights Act of 1964, as well as age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA).  On January 9, 2012 Defendant filed a Motion for Summary Judgment, seeking dismissal of all Plaintiff's claims.

## II. STANDARD OF REVIEW

### Civil Rule 56(a) Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion."  Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347.  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n*., 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

Defendants argue that summary judgment should be granted in their favor because Plaintiff has not established a prima facie case as to each claim, which Plaintiff counters.  In the alternative, if the Court determines Plaintiff has established a prima facie case, Defendants argue that they had a legitimate reason for terminating Plaintiff.  Plaintiff argues any claims of legitimate termination are pretextual.

### III. LAW AND ANALYSIS

Plaintiff alleges four separate claims against Defendants:  (1) discrimination based on race in violation of Title VII of the Civil Rights Act of 1964; (2) discrimination based on race in

7

violation of R.C. 4112.01 *et seq*; (3) discrimination based on age in violation of the Age

Discrimination in Employment Act of 1967; and (4) discrimination based on age in violation of

R.C. 4112.01 *et seq*.  The *McDonnell-Douglas* formula is the evidentiary framework applicable

for claims brought under Title VII, the ADEA, and to claims of discrimination under Ohio state

law.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Mitchell v. Toledo

Hosp.*, 964 F.2d 577 (6th Cir. 1992).  Thus, all of Plaintiff's claims will be analyzed in the same

manner.

## 1. Plaintiff Fails to Establish a Prima Facie Case

In order to establish a prima facie case of discrimination, plaintiff must demonstrate

that:  (1) he was a member of a protected class; (2) he suffered an adverse employment action;

(3) he was qualified for the position; and (4) he was replaced by, or the discharge permitted the

retention of, a similarly situated, non-protected employee.  *Santoro v. Borden, Inc.*, 843 F.2d

1392 (6th Cir. 1988); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir. 1982);

*Coryell v. Bank One Trust Co.*, 101 Ohio St.3d 175, 2004-Ohio-723 at ¶ 20 (March 3, 2004).

Where there is no direct evidence of discrimination, the Court applies a three-step

burden-shifting analysis to discrimination actions under which:  (1) the plaintiff must first set

forth a prima facie case of discrimination; (2) the burden of production then shifts to the

employer to articulate some legitimate, nondiscriminatory reason for its actions; and (3) if the

employer carries the burden, the plaintiff must then prove by a preponderance of the evidence

that the reasons offered by the employer were a pretext for discrimination.  *Texas Dep't of Cmty.

Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981); *McDonnell Douglas Corp.*, 411 U.S. at 802.

The ultimate burden of persuasion remains at all times with the plaintiff.  *St. Mary's Honor Ctr.*

*v. Hicks*, 509 U.S. 502, 507 (1993).

Defendants do not dispute that Plaintiff satisfies the first two elements of the prima facie case for discrimination.  Plaintiff is an African American and was discharged at the age of sixty-nine, making him a member of a statutorily protected class; and due to his termination, he suffered an adverse employment action.

When analyzing the third element of a prima facie case of discrimination, a court should "focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003). "Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id*. at 576.  In determining whether an employee has satisfied the third element of his prima facie case of employment discrimination, that he was qualified for his job, the court should look at whether the employee met his employer's legitimate expectations prior to the events that sparked his termination, rather than looking to the reason for termination offered by the employer, no matter how purportedly objective and neutral that reason might seem.  *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000).

Here, Defendants' proffered nondiscriminatory reason for discharging plaintiff is that he did not satisfy the job description it had implemented shortly before he was hired.  Defendants also rely on Plaintiff's alleged failure to satisfy the requirements of the job description in arguing that Plaintiff was not qualified under the prima facie case.  This approach is in direct conflict with the ruling in *Cline*, and conflates the first and second steps of the *McDonnell-Douglas* order

of proof.

Plaintiff has offered evidence, when viewed in the light most favorable to the non-moving party, to create a genuine issue of material fact as to whether he was qualified for the position.  Plaintiff had four decades of experience with computers, including positions as a data processing manager, an "architect" for technical networks, and a Chief Information Officer responsible for entire organizations' IT systems.  Plaintiff also received extensive training and experience in IT while working for IBM.  In addition to his experience working with computers, Plaintiff has a bachelor's degree in civil engineering and an MBA.  Plaintiff also presents testimony from former Deans McClendon and Lewellen that he was not only qualified as a teacher, but an asset to the school.  The former Chair of the IT Department at ITT, Henry Jones, also testified that Plaintiff was fully qualified.  Thus, Plaintiff has succeeded in demonstrating a genuine issue of material fact as to the third element of the prima facie case, that he was qualified for the position in question.

In order to establish the fourth element of his prima facie case, Plaintiff must demonstrate that he was replaced by someone outside the protected class or was treated differently than similarly situated, non-protected employees.  *See Wright v. Murray Guard Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).  The employee does not need to demonstrate an exact correlation with the co-employee receiving more favorable treatment in order for the two to be considered similarly situated; rather, the co-employee must be similar in all relevant aspects.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998).  An independent determination of relevant aspects of employment status must be considered in each case.  *Id.* at 352.  In *Leigh v. Bureau of State Lottery*, 876 F.2d 104 (6th Cir. 1989), a similar case, plaintiff, who was hired by mistake

and terminated, claimed that the reallocation of certain white employees supported an inference

of discrimination.  The court found that those employees were not similarly situated because they

had more relevant education and prior experience.  *Id.*; *see also White v. Columbus Metro. Hous.*

*Auth.*, 429 F.3d 232 (6th Cir.2005) (holding employees not similarly situated because did not

have similar qualifications).

The dispositive issue is whether Plaintiff and co-employee, John Donnenwirth, are

similarly situated in all relevant aspects.  Plaintiff alleges that he and Donnenwirth, at the time a

48 year old white male, are similarly situated and that Donnenwirth was not terminated from his

position.  Since Plaintiff argues that he and Donnenwirth have similar qualifications, their

previous course work is relevant.  Neither Plaintiff nor Donnenwirth have bachelor degrees in an

area related to IT.  However, Donnenwirth has completed fifteen semester hours of course work

in IT; whereas Plaintiff admits he has not.  (Lynch Dep. at 155).  In addition to satisfying the

minimum academic course work requirements to teach IT courses, Donnenwirth possesses

several professional certifications that further qualify him to teach IT courses.  (Donnenwirth

Dep. at 151-162).  Plaintiff cannot establish that he was treated differently than a similarly

situated, non-protected employee, because he and Donnenwirth are not similarly situated  in all

relevant aspects.  Thus, Plaintiff cannot establish the fourth element of his prima facie case; and,

as a result, summary judgment is appropriate.

## 2. Defendants Articulate a Legitimate Non-Discriminatory Reason for Plaintiff's Discharge

If Plaintiff could satisfy all the elements of his prima facie case, the *McDonnell Douglas*

analysis then shifts the burden of production to Defendants to articulate legitimate,

nondiscriminatory reasons for their actions.  "The employer's burden is satisfied if he simply

'explains what he has done' or 'produces evidence of legitimate nondiscriminatory reasons.'"
*Burdine*, 450 U.S. at 252-253.  Defendant need not persuade the Court that it was actually
motivated by the proffered reasons, but it is sufficient to raise a genuine issue of fact as to
whether it discriminated.  *Id* at 254.

     Defendants have met their evidentiary burden of providing a legitimate,
nondiscriminatory reason for Plaintiff's termination.  Defendants have offered admissible
evidence that they had a set of minimum qualifications in place at the time Plaintiff was hired
and that he did not meet those qualifications.  Plaintiff does not contest whether Defendants
offered a legitimate nondiscriminatory reason for his termination.  Instead, Plaintiff claims that
the reason proffered by Defendants is pretext for discrimination.

### 3. Plaintiff Fails to Establish Pretext

     Having proffered a legitimate, nondiscriminatory reason for the plaintiff's termination,
the burden shifts back to the plaintiff who must prove, by a preponderance of the evidence, that
the reason proffered by the employer was pretext for discrimination.  Plaintiff can establish
pretext by showing that the defendant's proffered reason:  (1) had no basis in fact; (2) did not
actually motivate the challenged conduct; or (3) is insufficient to explain the challenged conduct.
*Upshaw v. Ford Motor Co.*, 576 F.3d 576, 586 (6th Cir. 2009).

     Plaintiff first argues that Defendants' proffered reason has no basis in fact and that he met
both ITT's hiring standard as well as the ACICS standard.  Plaintiff contends that because both
civil engineering and IT involve the use of math, that they are sufficiently related to satisfy the
job description.  Plaintiff argues further that because math is sufficiently related to IT, he also
satisfies the minimum requirement of fifteen semester hours in the subject area.  To establish that

defendants' proffered reason has no basis in fact, plaintiff must provide evidence that is a direct attack on the credibility of the employer's articulated reason for firing plaintiff. *See Manzer v. Diamond Shamrock Chemicals*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Plaintiff did not provide evidence that directly attacks the credibility of Defendants' articulated reason. Plaintiff admits in his testimony that he did not satisfy the minimum fifteen semester hours requirement in the IT field. (Lynch Dep. at 155). Plaintiff also admits that, beyond a shared, technical background in math, IT and civil engineering are not related. *Id* at 151-152. Plaintiff offers no objective evidence, other than his own testimony and the testimony of John Donnenwirth, that having taken courses in math qualifies him to teach IT. Dr. Carlson, former Vice President of Academic Affairs at ITT and current Chair of the ACICS, also testified that Plaintiff did not satisfy the requirements of the job description. Thus, Plaintiff cannot establish that Defendants' proffered reason has no basis in fact.

Even if Plaintiff could establish that he met the requirements of the job description, there are only two sources of evidence that could possibly support the inference that his termination was discriminatory. The first is the testimony of Ronald Lewellen, that, in his opinion, Plaintiff was terminated because of his age. However, it is well established that mere personal belief, conjecture, and speculation is insufficient to support an inference of discrimination. *See Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006). The second is the statement made to McClendon, by Contiguglia, about Plaintiff, that "He's got to go." However, this statement alone cannot support an inference of discrimination because nothing in either the statement, or McClendon's testimony, calls into question Defendants' assertion that Plaintiff did not meet the minimum requirements of the job description. *See Grizzell*, 461 F.3d at 722

13

(finding employer's statement insufficient to support inference of discrimination because statement gave no insight as to why adverse employment action was taken).  Thus, even if Plaintiff did meet the minimum requirements of the job description, he cannot establish that his termination was discriminatory.  *See Mischer v. Erie Metro. Hous. Auth.*, 345 F. Supp 2d 827, 830 (N.D. Ohio 2004) (finding employer may make employment decision for good reason, bad reason, reason based on erroneous facts, or no reason at all as long as reason not discriminatory).

Next, Plaintiff argues that Defendants' proffered reason did not actually motivate the decision to terminate him.  When a plaintiff claims that the employer's legitimate, nondiscriminatory reasons for discharge did not actually motivate discharge, a plaintiff must present additional evidence of discrimination beyond the prima facie case.  Because plaintiff does not challenge defendant's reason, no inference of discrimination arises.  *See Marano v. Aircraft Braking Sys., Inc.*, 138 F. Supp. 2d 940 (N.D. Ohio 2001).  Plaintiff must argue that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup."  *Sherman v. Am. Cynamid Co.*, 188 F.3d 509 (6th Cir. 1999).

Plaintiff fails to establish that Defendants' proffered reason did not actually motivate the decision to terminate him.  Plaintiff offers evidence that Defendants have changed their basis for terminating him, and contends that this creates an inference that the proffered reasons did not actually motivate the decision.  In doing so, Plaintiff relies on *Ward v. Von Mauer, Inc.*, 574 F. Supp. 2d 959 (S.D. Iowa 2008), which states that a plaintiff may make a sufficient showing of pretext by showing that the employer made substantial changes over time in its proffered reason for an employment decision.  *Id* at 986.  The court in *Ward* found that, even though the defendant

14

had offered several different reasons for firing the plaintiff, there was no substantial change.  *Id* at 987.  In the present case, Plaintiff admits in his testimony that Defendants' proffered reason all along was that Plaintiff did not meet the minimum requirement of fifteen semester hours of course work in the subject area.  (Lynch Dep. at 155).  Plaintiff even circled this portion of the job description to call to his counsel's attention that it was the section of the job description "that's stated in all the correspondence going back..."  *Id.*  As a result, the allegedly inconsistent and shifting reasons for terminating Plaintiff do not show by a preponderance of the evidence that Defendants' articulated reason for their actions was merely pretextual.

Plaintiff's next argument is that Defendants' proffered reason is insufficient to explain Plaintiff's discharge.  Plaintiff contends that having an MBA qualified him to teach business courses; and that he should have been reassigned, rather than discharged.  Defendants offer evidence that Darosa, in concert with ITT's HR Department, conducted a search of ITT job openings which Plaintiff was qualified to teach, but found none.  (Darosa Depo. at 78-83).  Plaintiff does not directly rebut this evidence, but instead offers testimony by former Dean Ronald Lewellen, that it was his impression that Defendants were not interested in alternatives.  (Lewellen Depo. at 37).  Lewellen also testifies that he thought what motivated Ann Contiguglia was "personal as opposed to professional."  (*Id* at 30.)  Once again, it is well established that "[m]ere personal belief, conjecture, and speculation are insufficient to support an inference of discrimination."  *Grizzell*, 461 F.3d at 724.  Thus, because Plaintiff offers no objective evidence that there were any positions open for which Plaintiff was qualified, he cannot establish that Defendants' proffered reasons are insufficient to explain his discharge.

Lastly, Plaintiff argues that Defendants' proffered reason was never used in the past to

discharge employees.  An employee can show that the employer's proffered nondiscriminatory reason for adverse employment action is pretext for discrimination by offering evidence that the proffered reason was never used in the past to discharge an employee.  *See Smith v. Chrysler Corp.*, 155 F.3d 799 (6th Cir. 1998.)

Defendants offer evidence, that in 2009, ITT discharged Gary Abramovitz because he did not fit the job description, as he did not have a bachelor's degree from an accredited college. Plaintiff attempts to distinguish this instance by pointing out that he does have a bachelor's degree from an accredited college.  However, the fact remains, both Abramovitz and Plaintiff were discharged because it was discovered that they did not meet the requirements of the job description set forth by ITT.  Furthermore, even though Abramovitz was terminated after Plaintiff, his termination occurred well before the commencement of this law suit and there is no indication that this case influenced that decision in any way.

The Sixth Circuit has also suggested that the test to establish pretext set forth in *Smith* is not the preferred test.  *See Layman v. Alloway Stamping & Mach. Co., Inc.*, 98 F. App'x  369, 377 (6th Cir. 2004).  Although the test spelled out in *Smith* has been used on some occasions, the more common expression of the third method of proving pretext is found in *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d at 1084 (6th Cir. 1994).  *See Layman*, 98 F. App'x at 377.  Under the *Manzer* formulation, the first two methods are the same as in *Smith v. Chrysler Corp.*, however, the third method of proving pretext differs (at least in form):  the plaintiff may establish pretext by showing that the reasons proffered by the employer for the termination "were insufficient to motivate the discharge."  *Manzer,* 29 F.3d at 1084; *see also Layman*, 98 F. App'x at 377.  The *Manzer* court noted that this showing ordinarily "consists of evidence that other

employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer*, 29 F.3d at 1084.

Here, as discussed above, Plaintiff fails to establish that another similarly situated employee, not in the protected class, was retained.  Although Plaintiff and Donnenwirth both lack a bachelor's degree in a field related to IT, Donnenwirth has completed the minimum fifteen-hour requirement as well as several professional certifications, whereas Plaintiff has not. Thus, Plaintiff has failed to establish pretext because he and Donnenwirth are not similarly situated in all relevant aspects.

Under the *McDonnell-Douglas* analysis, Plaintiff has failed to establish his prima facie case for discrimination based on either age or race.  Furthermore, assuming *arguendo*, that Plaintiff could establish a prima facie case for discrimination based on either race or age, Plaintiff has failed to establish that Defendants' articulated reason for termination was pretext for discrimination.

## IV. CONCLUSION

For all the reasons set forth above, the Summary Judgment Motion of Defendants has merit.  Plaintiff is unable to establish a prima facie case for race or age discrimination.  Had Plaintiff been able to establish a prima facie case, Defendants articulated a legitimate, nondiscriminatory reason for Plaintiff's termination.  Plaintiff is unable to establish that Defendants' articulated reason for termination is pretext for discrimination.  Therefore, Defendants' Motion for Summary Judgment is granted as to all claims.

**IT IS SO ORDERED.**


                                              s/ Christopher A. Boyko
                                              **CHRISTOPHER A. BOYKO**
                                              **UNITED STATES DISTRICT JUDGE**
_____

DATED:  June 29, 2012

18